FACTORY MUTUAL LIABILITY INSURANCE COMPANY OF AMERICA, Plaintiff, *v.* NEWARK INSURANCE COMPANY et al., Defendants.

Supreme Court, Special Term, Fulton County, December 28, 1966.

*Carter & Conboy* (*James S. Carter* of counsel), for plaintiff. *William J. Stewart* for Newark Insurance Company and another, defendants. *Schlusberg, Schlusberg & Nershi* for Alta L. Connor, defendant. *David E. Lider* and *Arnold M. Gordon* for Caroline Dambrosi and another, defendants.

JOHN J. O'BRIEN, J. On April 17, 1964, a Ford Galaxie automobile owned by Fulton County Motors, Inc., hereafter referred to as Motors, was being operated by Alta L. Connor, on East Fulton Street in the City of Gloversville, New York. Said automobile struck the infant Eugene Dambrosi, a kindergartner, causing him to sustain personal injuries.

Miss Connor had owned a Ford automobile, and, a few days prior to April 17, 1964 entered into a contract with Motors whereby she agreed to purchase a new one which was to be manufactured for her, selling her existing Ford to Motors as part payment on the purchase price. Because Miss Connor's automobile was known in the trade as a " cream puff ", Motors requested immediate possession so that it could sell it. Miss Connor agreed after Motors agreed to lend her a demonstrator until her new automobile was delivered. She took possession of Motors' demonstrator, a Ford Galaxie, on Tuesday, April 14, 1964.

As a result of the accident on April 17, 1964, Eugene Dambrosi and his mother commenced an action to recover damages for his injuries. Plaintiff Factory Mutual Liability Insurance Company (hereafter referred to as Factory) insured Miss Connor under a policy then in effect wherein it agreed to pay in her behalf sums she was legally obligated to pay as damages for bodily injury sustained by any person " arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile ".

Defendant Motors was insured by defendant Newark Insurance Company (hereafter Newark) under a garage liability policy which obligated Newark to pay the sums Motors became legally obligated to pay as damages because of bodily injury " arising out of the garage operations hazard, including only

the automobile hazard for which insurance is afforded as indicated in the declarations. Insurance was afforded in the declarations for "All automobiles". "Garage operations" were defined as "The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto".

Under the heading of "Liability" the policy covered:

"AUTOMOBILE HAZARDS

"1. All automobiles

"(a) The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automobiles owned by or in charge of the named insured and used principally in garage operations, and

"(b) The ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of (i) the named insured, a partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnishes automobiles for their regular use."

Newark's policy defined the Persons Insured as "(1) The named insured (2) With respect to garage operations other than the Automobile Hazard * * * (3) With respect to the Automobile Hazard".

A rider attached to the policy was entitled "Limited Coverage for Certain Insureds" and amended the definition of paragraph (3) of Persons Insured and added paragraphs (4) and (5). The rider read:

"(3) With respect to an automobile to which the insurance applies under paragraph 1(a) of the Automobile Hazards, any of the following persons while using such automobile with the permission of the named insured, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission:

"(a) any employee, director or stockholder of the named insured, any partner therein and any resident of the same household as the named insured, such employee, director, stockholder or partner.

"(b) any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility laws of the state in which the automobile is principally garaged, is available to such person * * *.

"(4) With respect to an automobile to which the insurance applies under paragraph 1 (b) of the Automobile Hazards, any person while using such automobile with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission".

After the Dambrosi action was commenced, Newark refused to defend Miss Connor, claiming that since she had other insurance issued by plaintiff Factory, she was not an insured and it was not obligated to defend her. By this action, plaintiff Factory seeks a declaration of its rights and those of Newark.

The policy distinguishes between insureds with respect to the "garage operations hazards" and the "automobile hazards". The rider defined "insureds" under paragraph (3) as to make a distinction between automobiles used in "garage operations" (AUTOMOBILE HAZARDS, par. 1, subd. [a]) and automobiles owned by the named insured while furnished for use by "any other person". (AUTOMOBILE HAZARDS, par. 1, subd. [b].) With respect to insurance applying under subdivision (a) of paragraph 1 of the heading "AUTOMOBILE HAZARDS" in the policy, if the automobile loaned to Miss Connor came within "garage operations", then she would not be an "insured" because she had other insurance, and of course, Newark would not be obligated to defend her, unless as Factory argues, its insurance did not cover the automobile furnished to Miss Connor because it was not a "temporary substitute automobile", since when the demonstrator was loaned to her, she did not own any automobile for which the demonstrator could be a substitute. Assuming that the loan of any automobile is included within "garage operations", Newark would be correct in claiming that Miss Connor was not an insured.

However Newark's policy and rider also defines "insureds" with relation to subdivision (b) of paragraph 1 under the heading of the "AUTOMOBILE HAZARDS", and paragraph (4) of the rider makes Miss Connor or any person who used the demonstrator with her permission an insured as a person to whom an automobile was loaned by the named insured for her "regular use". The exclusion contained in subdivision (b) of paragraph 3 of the rider, of a person as an insured if she had other insurance, is not made to apply to the loaning of an automobile to "any other person * * * for their regular use". That being so, Miss Connor was an insured under paragraph 4 of the rider.

Obviously, an ambiguity exists in this policy and under the rule pertaining to ambiguities, the policy is construed most strictly against Newark which wrote the policy. Cases involving '' garage liability policies '' include *Nationwide Mut. Ins. Co. v. Exchange Mut. Ins. Co.* (49 Misc 2d 707) and *Switzer v. Merchants Mut. Cas. Co.* (2 N Y 2d 575); but neither case is of help in interpreting the policies here involved.

In view of this interpretation of the policy, it is not necessary to pass upon the contention of Factory that its policy did not cover Miss Connor while she was using Motors' demonstrator because it was not a substitute automobile, although it must be pointed out that Miss Connor paid for automobile liability insurance coverage and it would be strange indeed if a policy providing for automobile liability insurance was held not to cover the policyholder because she was using an automobile owned by someone else.

Judgment may be entered declaring that Newark must defend Miss Connor in the Dambrosi action, that the policy of Newark covers Miss Connor, that she is an insured under that policy, that Newark must pay any judgment recovered against her arising out of the accident of April 17, 1964, and that the insurance of plaintiff as to Miss Connor is excess insurance.